Gilmore, J.
The controlling questions of law raised upon the record, will be considered in the order in which they are presented in argument.
First. It is in effect contended by counsel for plaintiff *304 in error, that the act of April 17, 1872, under which this action was brought, can not, in view of section 16, article 2, of the state constitution, which provides that, “ No bill shall contain more than one subject-matter, which shall be clearly expressed in its title,” etc., be construed to apply to lands set apart for the support of schools in the French grant, or to authorize, the county auditor to sue for a balance remaining unpaid on the sale of the same.
The ground of objection is placed upon the title to the act, which is as follows: “ An act supplementary to an act entitled ‘ an act to incorporate the original surveyed townships/ passed March 14, 1831, and to repeal an act therein named.”
It is claimed that in construing this act with reference to its title, it is apparent that the legislature intended it to apply only to the'sales of school lands belonging to “ original surveyed townships.”
The answer to this is, that the act must be considered and construed in counectidn with other statutes in pari materia; and when so considered and construed, it may be found that its provisions were clearly intended to apply to the school lauds of the French grant; and if so found, the constitutional provision relied on, will be held to be directory to the legislature, and will not be permitted to control the operation of the act, in reference to a subject-matter clearly pi’ovided for therein, notwithstanding such subject-matter may not be clearly expressed in the title of the act. Especially must this rule apply where the act in question is supplementary and merely remedial'in its character.
In The Trustees of Green Township v. Campbell et al., 16 Ohio St. 11, which involved the question of the tenure of the French grant school lands, it is settled that “ the title to the lands selected by the secretary of the treasury under the act of Congress of May 20, 1826, for the support of schools within the tract of country usually called French grant, is vested in the State of Ohio for that purpose.” In the opinion it is said: “ The tenure of the lands selected for the support of schools in the French grant, upon a *305 proper construction of [the third section of] this act,is the-same as that of the lands authorized by the first section to-be selected for townships. Both classes of land, when selected, are to be held by the same tenure and the same-terms, for the support of schools, as section sixteen is held.”' It is further said that these lauds “ became the property of the state in trust for the townships or districts for which they were designed. If the title had been déclared in terms-vested in the state, the management and disposition of the lands, in the execution of the trust, would, notwithstanding, have been under the sole control' of the legislature.”' The title of the lands in question was, therefore, held by the state as trustee.
In providing for the preservation of the school lands of the state, and with a view to making them productive in the-form of lands, the legislature passed the act of March 14,. 1831, entitled “ an act to incorporate the original surveyed, ^townships.” S. & C. 1577.
The next act relating to the school lands that need be-not-iced is-that of April 16, 1852, entitled “an act to regulate the sale of school lands and the surrender of permanent leases thereto.” S. & C. 1339. It -will be observed’ that the provisions of this act are not restricted to the school lands in original surveyed townships, although they would' of course be included.
The next act necessary to notice is a special act, entitled. “,’an act to authorize the sale of school lands belonging to-the Erench Grant in the county of Scioto.” 51 Ohio Laws, 528. The first section of the act authorizes the sale of the-lands in question under the provisions of the act last cited..
The second section authorizes the trustees of Green township to perform, “ all and several, the duties and acts, in regard to said lands and the sale thereof, which, by the provisions of the act aforesaid, might be done and performed by the trustees of any original surveyed township, in regard to lands belonging to such original surveyed township.”
The third section is as follows: “ In construing the act: *306 of April thirteenth [sixteenth] aforesaid, for the purposes herein contemplated, all the provisions thereof, in regard to original surveyed townships, shall be held to apply to the township of Green aforesaid, precisely as if the words township of Green were substituted in place of the words ‘ original surveyed township.’ ”
By this act, which was passed to enable the state to execute its trust in reference to the school lands of the French grant, these lands became subject to the act regulating the •sales of the school lands of the original surveyed township, and the lands were sold accordingly; and all the remedies for the enforcement of the sale that were provided by the general act became applicable to the lands of the French grant so sold.
If, therefore, the act of April 17, 1872, applies to the •sale of school lands belonging to original surveyed townships, and it is admitted in argument that it does, then, in view of the subject-matter of the act, it must be held to .apply to the school lands of the French grant. The fourth section of this act might, perhaps, have been more appropriately made as a supplement to the act regulating the sale of school lands than to that incorporating original surveyed townships; but all the statutes of the state relating -to the school lands, and the preserving, leasing, and sale of •them, must be construed together; and, in this view, we .are of the opinion that the act in question was properly passed as a supplement to the act incorporating original surveyed townships; and that the fourth section of the act .authorized the bringing of the action as it was brought in this case, notwithstanding the title of the act, if taken literally, would limit its provisions to the school lands of ■original surveyed townships.
The second proposition raised and presented is: That the act of April 17, 1872, is retroactive, and therefore in conflict with section 28, article 2, of the constitution. The ■claim is that the act creates a new obligation,-imposes a new duty, and attaches a new disability in respect to a •transaction already past.
*307 To this claim we can not assent. The act does neither of the things named.
The obligation of the defendant below to correct the mistake that occurred at the time the transaction was closed between him and the county auditor, and in consequence of which mistake he obtained his deed, without paying the full amount of the price of the land, arose at the time the mistake occurred and the contract of sale was executed, and continued until the obligation was merged in the judgment, unless the right to enforce it was barred, which will be determined presently; and the providing of a remedy where none had before existed for the enforcement of the obligation, was neither creating a new obligation, imposing a new duty, nor attaching a new disability in respect to a past transaction, within the meaning of the section of the constitution relied on. Nor does the fact that if judgment is recovered, it may have to be satisfied out of other property of the .defendant, affect the question, for the reasons shown in the consideration of the next proposition.
The third proposition relied upon is this: “ Under the statutory proceedings by which Seeley acquired the title to the French grant school lands, no obligation for the payment of the amount toTbe paid in order to acquire his title to the property was assumed which could be enforced at law.”
Suppose this proposition is admitted to be true, and that the exclusive remedy for the ehforcement of the sale was by the forfeiture provided by the statute; still it would be applicable to the statutory sale only during the period that the terms of the sale were executory, and would have no application after it had been executed by both parties, and-the purchaser had obtained the title to the lands he had purchased.
"Whether the payment of the purchase-money could or could not have been enforced against the purchaser while the contract remained executory, otherwise than -by forfeiture, is therefore immaterial in this ease, for the sale is executed.
*308 Both parties intended to execute it, but by a mutual mistake in executing it, the state conveyed away the title of property held by it in trust- for a less sum than was due to it according to the terms of sale, and for a less sum than the purchaser intended to pay, as found by the court.. On the one hand, the state has parted with the title to the property for a sum less than'by the terms of the sale it was-entitled to, which it would not have done’if it had known the facts, for it can not be presumed that it would have-violated its trust -by giving away the trust fund; and by parting with the title it has lost its right to a forfeiture of the lands. On the other hand, the purchaser has obtained the title to the lands for less than the terms of the sale required of him, and less than he intended to pay.
On the plainest principles of justice, equity has always-required such mistakes to be corrected, when timely application has been made therefor by the proper parties. This-proposition must therefore be rejected as unsound.
The fourth proposition is : That the cause of action is barred by the statute of limitations.
In the view that we take of this proposition, it is unnecessary to discuss at length the points made in argument. We do not think that the trustees -of Green township, as beneficiaries of the trust, had authority to bring the action either in the name of the township or in the name of .the-state for the use of the township. Hence, at the time the cause of action accrued, the state alone had the right to sue upon it. The doctrine is well settled, in the absence of a statute to the contrary, that no laches is to be imputed to'the government, and against it no time runs so as tó bar its rights. 16 Ohio St. supra.
The right to sue upon the cause of action was in the state from the time it accrued until the act of April 17, 1872, was passed, giving the auditor of the county the right to sue upon it. Inasmuch as the statute of limitations did not run against the cause of action while the right to sue upon it was in the state alone, and the action having been commenced by the auditor a few months after the power *309 to sue was conferred upon him, it follows that the cause of notion was not barred at tbe commencement of tbe suit.
¥e find no error in tbe record.
Tbe judgment of tbe district court is affirmed.

Judgment accordingly.